UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

**DAVID L. NYITRAY III,** an individual,
**ISEA MARICHALAR,** an individual,
      Plaintiffs,

v.

**FRANCO LA FRANCA, individually and as the
Executor of the Estate of Agostino LaFranca**,
**ROBERTO LEONARDI,** an individual, and
**DAVE TINWALDE,** an individual,
jointly and severally,

      Defendants.

Case No.
Hon.

**TRIAL BY JURY DEMANDED**

_____

CLASS ACTION COMPLAINT PURSUANT TO THE
RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

*There is a pending civil action arising out of some of the
facts alleged in ther Complaint - Case No. 18-CV-846*

NOW COME the Plaintiffs, by and through their attorneys at Avanti Law Group, PLLC, and in their original Complaint brings this civil action pursuant to **Racketeer Influenced and Corrupt Organizations Act** (hereinafter "RICO"), 18 U.S.C. 1961 et seq., on their own behalf and on behalf of a class of individuals who were similarly injured by Defendant's violations of the RICO. Plaintiffs complains that the Defendants Franco LaFranca, Agostino LaFranca[1], operated a **criminal enterprise** engaged in a pattern of racketeering activity, including Wire Fraud and Mail Fraud, involving numerous RICO predicate acts, all in an effort to: 1) defraud the state and federal tax authorities (**TAX EVASION SCHEME**) as well as to 2) defraud Plaintiffs and the members of the class of their wages (**WAGE THEFT SCHEME**) and 3) defraud their worker's compensation insurance carrier (**WORKERS COMPENSATION INSURANCE SCHEME**). Defendant Agostino's systematically and continuously, over the last ten (10) years and more, have conducted a corrupt enterprise in violation of the RICO Act, all acts of which are continuing in nature past his death. Defendant Franco LaFranca and Defendant Agostino La Franca, together with Defendant Roberto Leonardi and Defendant Dave Tinwalde, conspired to violate the RICO. Plaintiffs and members of the class were injured as a result of the Defendant Agostino's schemes to defraud and their conspiracy to violate the RICO. Plaintiffs seeks a

_____

[1] Plaintiffs name Franco La Franca as a defendant since Agostino LaFranca is deceased, and Franco La Franca is the appointed executor of Agostino LaFranca's estate in Kent County Probate Court case number 17-202220-DE. Franco La Franca is also a defendant by himself in this case as well.

declaration that their rights, as well as those of the class, have been violated and that she and members of the class be awarded damages for Defendant' unlawful conduct. In support of their claim he states as follows:

**PARTIES**

1.    Plaintiff David L. Nyitray III ("Nyitray") is a resident of the County of Kalamazoo, state of Michigan.

2.    Plaintiff Isea Marichalar ("Marichalar") is a resident of the County of Allegan, state of Michigan.

3.    Defendant Agostino LaFranca ("Agostino") was the owner of Vitale's III of Allegan, LLC, during the time the various RICO schemes were instituted and maintained.

4.    Defendant Agostino LaFranca was responsible for the day-to-day operations of Vitale's III of Allegan, LLC located at 320 Western Ave. Allegan, Michigan 490 (hereinafter referred to as "Vitale's of Allegan") until his death in October 2017 as well as the creation, enactment, and implementation of company wide policies. *Exhibit A, LARA Entity Search.*

5.    Defendant Franco LaFranca ("Franco") is the court appointed executor of the estate of Agostino LaFranca.

6.    Defendant Franco is the current owner of Vitale's III of Allegan, LLC.

7.    Defendant Franco took over the business dealings of Vitale's III of Allegan, LLC after the death of Defendant Agostino LaFranca.

8.    Defendant Franco is responsible for the day-to-day operations of Vitale's III of Allegan, LLC.

9.    Defendant Roberto Leonardi (hereinafter referred to as "Leonardi") is a manager at Vitale's of Allegan and responsible for payroll, processing, scheduling, and directing Plaintiffs.

10.   Defendant Dave Tinwalde (hereinafter referred to as "Tinwalde") is a manager at Vitale's of Allegan and responsible for payroll, processing, scheduling, and directing Plaintiffs.

**JURISDICTION AND VENUE**

11.   This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(a) (RICO).

12.   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the actions and omissions giving rise to the claims pled in ther Complaint occurred in ther District.

## **GENERAL ALLEGATIONS**

13.  Plaintiff Nyitray worked for Defendants Agostino, Defendant Leonardi, and Defendant Tinwalde from March 2015 to December 2015 ("Term 1"), January 2016 to April 2017 ("Term 2"), and February 2018 to present ("Term 3").

14.  During the course of all three terms of his employment, Plaintiff Nyitray worked as a delivery driver and cook for Defendants.

15.  During the course of his entire employment, Plaintiff Marichalar worked as a driver and a cook for Defendants.

16.  Vitale's of Allegan is capable of holding a legal or beneficial interest in property.

17.  Defendant Agostino set the terms and conditions of Plaintiffs' employment at Vitale's of Allegan.

18.  During his employment at Vitale's of Allegan, Plaintiff Nyitray was compensated as follows;

   a.  During Term 1 of Plaintiff Nyitray's employment, as a delivery driver. Plaintiff Nyitray was compensated in the amount of $3.50 per hour plus tips and delivery fees.

   b.  During Term 2 of Plaintiff Nyitray's employment, as a cook. Plaintiff Nyitray was compensated in the amount of $7.00 per hour, and later on during this same term, Plaintiff Nyitray was compensated in the amount of $8.00 per hour.

   c.  During Term 3 of Plaintiff Nyitray's employment, as a cook and supervisor. Plaintiff Nyitray was compensated in the amount of $13.00 per hour.

19.  During his employment at Vitale's of Allegan, Plaintiff Marichalar was compensated as follows;

   a.  During Plaintiff Marichalar's time as a driver, Plaintiff Marichalar was compensated in the amount of $2.50 per hour plus tips and delivery fees

   b.  During Plaintiff Marichalar's time as a cook, Plaintiff Marichalar was compensated in the amount of $5.50 per hour plus tips.

20.  Defendant Leonardi and Defendant Tinwalde set Plaintiffs' work schedule at Vitale's of Allegan.

21.  In order to track their time, Plaintiffs relied on Defendant Leonardi to punch in their time on a time clock at the start of their shift and to punch their time out at the end of their shift, which Defendant Leonardi usually did prior to the end of their shift.

22.     For the entire duration of Defendant Agostino's ownership of Vitale's of Allegan, all compensation to Plaintiffs were paid in cash by Defendant Leonardi and Defendant Tinwalde at the direction of Defendant Agostino.

23.     In December of 2016, Agostino's brother, Executor Franco LaFranco's own restaurant in Paw Paw was brought under investigation by the Department of Labor.

24.     In March of 2017, Defendant Agostino changed his policy and paid some of his workers in a check for hours worked before twenty (20) hours per week, and a check for some hours worked after twenty (20) hours in a workweek. Any remainder of the hours were still paid in cash.

25.     All payments administered to Plaintiffs and class members were for straight time, regardless if they worked over forty (40) hours or not.

26.     Throughout Plaintiffs' entire employment with Defendant Agostino, these two systems were used to pay Plaintiffs and class members.

27.     Defendant Franco continued the policy described in Paragraph 24 once he took ownership until June 2018.

28.     Defendant Leonardi was and is responsible for the day to day operation of Vitale's of Allegan and were and are directly involved in the decisions regarding the recruitment, hiring, work duties, scheduling and compensation of Plaintiffs and class members.

29.     Defendants Agostino and Franco were responsible for the creation, implementation, and enforcement of company wide policies and practices.

30.     Defendant Leonardi and Defendant Tinwalde were and are similarly responsible for decisions related to hiring, firing, compensation, scheduling and work duties of Plaintiffs and the class members.

31.     Defendant Leonardi and Defendant Tinwalde were and are responsible for payroll, verifying time cards, and conveying information to the company's accountant and workers' compensation insurance agent.

32.     Defendants Leonardi and Tinwalde issued the workers the payment in cash.

33.     Defendant Leonardi and Defendant Tinwalde were fully aware of the hours worked by Plaintiffs and the class members.

## Tax Evasion Scheme

34.     Defendant Agostino devised a scheme, hereinafter known as the "Tax Evasion Scheme," with the goal of defrauding the state and federal tax authorities in order to avoid paying the requisite tax withholdings.

35.  Defendant Agostino benefitted from the Tax Evasion Scheme by realizing more profits than what he would have without the scheme as follows:

    a.  He did not pay the required withholdings to the tax authorities on the cash payments made to Plaintiffs and the class members for the hours recorded and paid in cash;

    b.  He was able to lessen his taxable income by not properly reporting the cash payments to the tax authorities.

36.  Once taking over from Defendant Agostino, Defendant Franco benefitted from the Tax Evasion Scheme by realizing more profits than what he would have without the scheme as follows:

    a.  He did not pay the required withholdings to the tax authorities on the cash payments made to Plaintiffs and the class members for the hours recorded and paid in cash;

    b.  He was able to lessen their taxable income by not properly reporting the cash payments to the tax authorities.

37.  As a result of these schemes against the tax authorities, Plaintiffs and the class were economically harmed by exposure to tax liabilities and penalties.

38.  Defendant Agostino and Defendant Franco's nonpayment of withholdings also lessened Plaintiffs and class members' future social security benefits.

39.  Defendant Agostino's Tax Evasion Scheme required that Plaintiffs and Class members were paid in cash straight time for all hours worked, regardless if it was over forty (40) or not.

40.  All hours worked before March of 2017 were kept off any official recording of hours worked by the business in order to further the scheme and defraud tax agencies.

41.  All hours worked that was paid in cash after March of 2017 were kept off any official recording of hours worked by the business in order to further the scheme and defraud tax agencies.

42.  Cash payments were distributed weekly at the restaurant location.

43.  Defendants' use of the Tax Evasion Scheme was an effort to defraud Federal and State tax authorities and entities so as to not pay the requisite withholding taxes required on the cash payments not reported for all hours.

44.  Defendant Agostino would not report the wages to the Federal and State tax authorities of the named Plaintiffs as evinced by the fact that he did not issue their W-2 forms.

45.  Defendant Agostino and Defendant Franco used the United States Postal Service to further their scheme by sending incorrect and/or tax forms that did not and does not

include the wages of named Plaintiffs and Class Members to federal and state tax authorities.

46.    By incorrectly reporting their total income, tax withholdings, and total wages paid to their employees, Defendant Agostino and Defendant Franco committed wire and/or mail fraud to further his scheme as follows:

a.    Defendant Agostino and Defendant Franco were required to submit a UIA 1028 to the state of Michigan quarterly every year pursuant to 29 U.S.C. § 49(c) (incorporated in state law as Michigan Compiled Laws 421.1 *et seq.*) These communications are due each year on April 25, July 25, October 25, and January 25. On these tax forms, they would file with the Michigan Unemployment Insurance Agency ("UIA") via Michigan Web Account Manager ("MiWAM") website or via U.S. Mail with the total number of wages earned from all employees that formed the basis for calculating their unemployment tax. The numbers reported on these forms did not include the wages paid via cash and therefore, were meant to defraud the state of Michigan into lessening Defendants' tax burden. Each year since the inception and implementation of the Tax Evasion Scheme, Defendant would commit four (4) instances of wire and/or mail fraud per year.

b.    Defendant Agostino and Defendant Franco were required to submit a Federal 941 form pursuant to 26 U.S.C. § 6011 *et seq.* Employers are required to make contributions in the amount of 6.2% of total wages paid to employees pursuant to 26 U.S.C. § 3111. These documents were communicated to the IRS and contained, *inter alia*, a report of the number of all employees employed by Defendant Agostino and Defendant Franco and total wages paid to the same. These documents were used to ascertain, based on total wages, what amount of money Defendant Agostino and Defendant Franco needed to contribute to the IRS. These documents were filed with the IRS  quarterly. These documents were either mailed using the U.S Postal Service or filed electronically. Each time this document was communicated with the incorrect/fraudulent wages obtained through Defendant Agostino and Defendant Franco's fraudulent Tax Evasion Scheme constituted a count of mail and/or wire fraud. Defendant Agostino and Defendant Franco would commit four (4) instances of wire fraud per year.

## Wage Theft Scheme

47.    Defendant's practices of only paying employees in cash straight times for all hours worked was also intended to defraud Plaintiffs and class members of their overtime premium pay for all hours worked over forty (40).

48.    Defendant's practices of only paying cash for the first twenty (20) hours worked and a check for all other hours and/or paying cash for all hours after the first twenty (20) was also intended to defraud Plaintiffs and class members of their overtime premium pay for all hours worked over forty (40).

49.    Defendant Agostino devised this Wage Theft Scheme intentionally to defraud Plaintiffs and class members of their proper wages.

50.    Defendant Agostino was responsible for implementing the Wage Theft Scheme and directed Defendant Leonardi and Defendant Tinwalde to enforce it as to the Plaintiffs and class members working at Vitale's of Allegan.

51.    Defendant Agostino switched to paying some money in cash and others by check due to his brother, Defendant Franco's restaurant being under investigation for a similar scheme.

52.    When Defendant Franco took over the business, he continued this scheme until June 2018.

53.    Any wage statements reported before or after the implementation of paying certain hours by check and the rest in cash were incorrect/fraudulent as they contained amounts that were for less than the amount owed and/or paid to each Plaintiffs and/or class member.

54.    Any wage statements reported before or after the implementation of paying certain hours by check and the rest in cash were incorrect/fraudulent as they contained amounts that were based on the Defendants' Tax Evasion Scheme.

55.    Defendant Agostino's policy of keeping all hours worked until 2017, and most hours worked after 2017, off the books and paid in cash was for the purpose of circumventing Defendant Agostino's obligations under the various tax codes as well as his obligations under the FLSA.

56.    Defendant Agostino and Defendant Franco failed to properly pay the Plaintiffs and the class members as required in order to realize a financial gain.

57.    Defendant Agostino and Defendant Franco utilized his unlawful policy in order to implement and further their fraud against the Plaintiffs and class members.

## Worker's Compensation Insurance Scheme

58.    Defendant Agostino devised a scheme, hereinafter known as the "Worker's Compensation Insurance Scheme", with the intended goal of defrauding their Worker's Compensation Insurance carrier by submitting fraudulent wage amounts to their carrier which was then relied upon and used to calculate their insurance premiums.

59.    Defendant benefitted from the Worker's Compensation Insurance Scheme by realizing more profits than what they would have without the scheme as follows:

    a.    He did not report the cash payment wages made to Plaintiffs and the class members for the hours recorded;

    b.    He was able to lessen their total wages reportedly paid to their Worker's Compensation Insurance company by not properly reporting the cash payments and/or total wages paid to his employees to his carrier.

c. This resulted in the insurance premiums being based on fraudulent information which resulted in a lower premium charged to the Defendant Agostino and Defendant Franco.

60.   As a result of accomplishing the goals of the scheme to defraud and in furtherance of this scheme, Defendant Agostino paid workers in cash for all hours worked up until March of 2017, and most hours worked after March of 2017.

61.   As a result of accomplishing the goals of the scheme to defraud and in furtherance of this scheme, Defendant Franco paid workers in cash for most hours worked from the time he assumed ownership after Defendant Agostino's death until June 2018.

62.   Defendant Agostino's unlawful policy required the Plaintiffs and the class members get paid all hours cash straight time before March of 2017, and some hours paid in cash either before or after hours worked over twenty (20), in order to avoid total hours worked over forty (40) on the official record of hours worked for the business to avoid paying overtime premium to Plaintiffs and class members.

63.   Upon his passing, Defendant Franco continued the scheme once he took over operations of the business.

64.   Cash payments were distributed weekly on restaurant location.

65.   Defendant Agostino's unlawful policy was an effort to defraud his Worker's Compensation Insurance carrier so as to not pay the high premiums by failing to report the cash payments made to Plaintiffs and class members for the hours recorded.

66.   By reporting the fraudulent wage amounts to their insurance carrier, Defendant Agostino and Defendant Franco used an interstate wire communication to further their scheme.

67.   By incorrectly reporting their total income, tax withholdings, and total wages paid to his employees, Defendant Agostino and Defendant Franco committed wire and/or mail fraud to further their scheme as follows:

a. Defendant Agostino and Defendant Franco were required to obtain and maintain insurance for Workers Disability Compensation Act claims pursuant to M.C.L. 418.301 *et seq.* These documents typically contain a wage breakdown. These documents are in the exclusive control of Defendants and/or their insurance company and are easily discoverable via subpoena to the insurance company. Every instance these documents were communicated to the insurance company with the incorrect/fraudulent wages obtained through Defendant Agostino's fraudulent Tax Evasion Scheme constitute a count of mail and/or wire fraud. Depending on discovery obtained, Defendant Agostino and Defendant Franco would commit at least one (1) instance of wire fraud per year.

68.   Plaintiffs and the class members were harmed by the natural and obvious consequence of implementing and furthering the scheme.

69.    In order to implement the scheme, Defendant Agostino and Defendant Franco had to lower the amount of wages reported to their worker's compensation insurance agent.

70.    The unlawful policy was the means to further the scheme's goal.

71.    As a result of Defendant Agostino's scheme, Plaintiffs and class members each were harmed by the Defendant's failure to report his full wages paid and by failing to withhold the required taxes from their wages.

72.    As a result of this scheme, Plaintiffs and the class were economically harmed by exposing them to tax liabilities and penalties.

73.    Defendant Agostino and Defendant Franco's nonpayment of withholdings also lessened Plaintiffs and class members' future social security benefits.

## RICO ENTERPRISE

74.    Plaintiffs is a "person" as within the meaning of 18 U.S.C. § 1964(c).

75.    Each individual Defendant is a "person" within the meaning of 18 U.S.C. § 1964(c).

76.    Plaintiffs and the Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3).

77.    Defendant Agostino, Defendant Leonardi, Defendant Tinwalde, Defendant Franco LaFranca, the payroll company for Vitale's of Allegan, the accountant for Vitale's of Allegan, Vitale's of Allegan, worker's compensation carrier(s) for Vitale's of Allegan, and all other managers carried out their racketeering activity through an association- in-fact "enterprise" (the `Enterprise"), as the term is defined  in 18 U.S.C. § 1961(4).

78.    The legal entities were used for illegal purposes by the unofficial, corrupt "enterprise."

79.    Although all Defendants participated in the Enterprise and were a part of it, they each also have an existence separate and distinct from the Enterprise.

80.    The common purpose of the enterprise was to defraud money from the state and federal tax authorities, Plaintiffs and class members, as well as the worker's compensation insurance companies in order to realize a greater financial benefit for Defendant Agostino and Defendant Franco.

81.    Through the criminal fraud schemes described above, the Defendant Agostino and Defendant Franco knowingly, and with specific intent to profit, operated and managed the enterprise through a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(c).

82.    Defendant Leonardi and Defendant Tinwalde conspired together and with Defendant Agostino and Defendant Franco in order to further the schemes described above in violation of RICO, 18 U.S.C. § 1962(d).

83.  This pattern of illegal activities committed by the Defendants, the "Predicate Acts," discussed below, were done with the purpose of financial gain/benefit and were done within the past ten (10) years and are continuing.

84.  By the acts alleged herein, Defendants, each and every one of them, jointly and severally, have aided and abetted and conspired to violate the law, through their ongoing criminal enterprise as set forth below.

85.  The Defendants each intended the natural and obvious results of their actions.

## PREDICATE RACKETEERING ACTS

86.  In order to perpetrate their criminal fraud scheme, Defendants knowingly and willfully committed the following predicate racketeering offenses of Mail and Wire fraud under RICO.

87.  The predicate acts were not isolated events, but were related acts aimed at the common purpose and goal of defrauding the tax authorities, the Plaintiffs and class members and their insurance carriers for profit.

### Predicate Criminal Violations of Federal Mail Fraud Statute, 18 U.S.C. § 1341

88.  Defendant Agostino and Defendant Franco acted in criminal violation of the federal mail fraud statute under 18 U.S.C. § 1341. 18 U.S.C. § 1341 provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

89.  Defendant Agostino and Defendant Franco knowingly used the mail with the specific intent of executing and furthering this fraudulent scheme, in violation of 18 U.S.C. § 1341.

90.     Defendant Agostino and Defendant Franco's use of the mail postal service was incident to an essential part of the scheme to defraud, namely to deceive and/or defraud the tax authorities, the Plaintiffs and class members and their insurance carriers.

91.     Defendant Agostino devised or intended to devise a scheme or artifice meant to defraud and/or to obtain money or realize monetary gain from state and federal tax authorities.

92.     Defendant Agostino devised or intended to devise a scheme or artifice meant to defraud and/or to obtain money from Plaintiffs and class members by not paying them their proper wages when due.

93.     Defendant Agostino devised or intended to devise a scheme or artifice meant to defraud and/or to obtain money or realize monetary gain from their worker's compensation insurance companies.

94.     In order to achieve or attempt to achieve the fraud described in the preceding paragraphs, Defendant Agostino and Defendant Franco sent correspondence and other documents that were sent or delivered by the Postal Service.

### *Predicate Criminal Violations of Federal Wire Fraud Statute, 18 U.S.C. § 1343*

95.     Defendant further acted in criminal violation of the federal wire fraud statute under 18 U.S.C. 1343. 18 U.S.C. § 1343 provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

96.     Defendant Agostino and Defendant Franco knowingly used the interstate wire communication with the specific intent of executing and furthering this fraudulent scheme, in violation of 18 U.S.C. § 1343.

97.     Defendant Agostino and Defendant Franco's use of wire communication was incident to an essential part of the scheme to defraud, namely to deceive and/or defraud the tax authorities, the Plaintiffs and class members and his insurance carriers.

98.     Defendant Agostino devised or intended to devise a scheme or artifice meant to defraud and/or to obtain money or realize monetary gain from state and federal tax authorities.

99.     Defendant Agostino devised or intended to devise a scheme or artifice meant to defraud and/or to obtain money from Plaintiffs and class members by not paying them their proper wages when due.

100.   Defendant Agostino devised or intended to devise a scheme or artifice meant to defraud and/or to obtain money or realize monetary gain from their worker's compensation insurance companies.

101.   Defendant Agostino and Defendant Franco transmitted or caused to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice when they transmitted telephone and cellular telephone calls, documents, facsimiles, emails, instant messages, and any other form of communication.

102.   Defendant Agostino and Defendant Franco intentionally used interstate wire communications to deposit funds and file tax documents with various tax agencies derived from their unlawful policy in order to defraud Plaintiffs and class members of their appropriate pay with the specific intent of furthering this fraudulent scheme, in violation of 18 U.S.C. § 1343 during their employment at Vitale's of Allegan.

103.   In order to achieve or attempt to achieve the fraud described in the preceding paragraphs, Defendant Agostino and Defendant Franco sent correspondence and other documents that were sent or delivered by the Postal Service.

## PATTERN OF RACKETEERING ACTIVITY

104.   The predicate acts of criminal racketeering activity described above constitute a "pattern of racketeering activity" as defined by RICO, 18 U.S.C. § 1961(5). As described above, Defendant Agostino and Defendant Franco repeatedly committed the predicate acts over a period of several years. In addition, Defendant Agostino and Defendant Franco repeatedly engaged in unlawful acts to further their criminal scheme upon the Plaintiffs and class members.

105.   Defendant Leonardi and Defendant Tinwalde, willingly, and with full knowledge of their actions and the natural and obvious consequences of those actions, conspired with Defendant Agostino and Defendant Franco to further the enterprise and assist him in committing a pattern of racketeering activity.

106.   The predicate acts of criminal racketeering activity described above were related in at least the following ways:

   a.   They had common participants;

   b.   They each had the same victims, namely the Plaintiffs and class members, as well as the government tax entities and insurance companies;

   c.   They each had the same purpose of defrauding government entities, their employees and their insurance carriers for the benefit of the Defendant Agostino and Defendant Franco and at the expense of Plaintiffs and class members;

d. They each accomplished this purpose through their unlawful policy of paying cash to their employees after every hour worked over forty (40);

e. They were interrelated in that without the acts of mail fraud and wire fraud, the Defendant Agostino and Defendant Franco would not have been able to exploit Plaintiffs and class members and deprive them of their rights and property.

107. Such acts of racketeering activity have been part of the Defendant' regular way of doing business through the enterprise(s) described above for at least ten years and has continued through at least the termination of Plaintiffs in October of 2017.

108. Throughout the relevant time period, each Defendants were a culpable "person" as defined by RICO, 18 U.S.C. § 1961(3).

## RULE 23 CLASS ALLEGATIONS

109. Plaintiffs brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on their own behalf and on behalf of all similarly situated current and former employees of Defendant Agostino and Defendant Franco who are or were employed at any time in the last four years. Plaintiffs proposes the following class definition:

> *All current and former employees of Vitale's restaurant located in Allegan that were paid in cash.*

Plaintiffs reserves the right to amend the putative class definition if necessary.

110. Plaintiffs shares the same interests as the putative class and will be entitled under the RICO to treble damages, attorneys' fees, and costs owed to them under nearly identical factual and legal standards as the remainder of the putative class.

111. The putative Class meets the numerosity requirement of Rule 23(a)(1) because, during the relevant period, Defendant employed dozens if not hundreds of workers. The Class members are so numerous that joinder of all such persons is impracticable and that the disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court. The precise number of Class members should be readily available from a review of Defendant' personnel, scheduling, time, phone, and payroll records, and from input received from the putative Class members.

112. The putative Class meets the commonality requirement of Rule 23(a)(2) because, during the relevant period, Defendant engaged in a common course of conduct that violated the legal rights of Plaintiffs and the Class.  Individual questions that Plaintiffs claims present, to the extent any exist, will be far less central to this litigation than the numerous material questions of law and fact common to the Class, including but not limited to:

a. Whether Defendants engaged in a policy or practice of keeping all hours off the books and administer all payments straight time in cash before March 2017.

b. Whether Defendants engaged in a policy or practice of keeping hours worked after or before twenty (20) off the books and only administered straight time cash payments for all hours worked by the Class;

c. Whether Defendants engaged in a scheme to defraud state and federal tax authorities;

d. Whether Defendants engaged in a scheme to defraud the Class of their wages;

e. Whether Defendants engaged in a scheme to defraud their worker's compensation insurance carrier;

f. Whether the Defendants engaged in Mail fraud;

g. Whether the Defendants engaged in Wire Fraud;

h. Whether the Class was harmed by the schemes to defraud;

i. Whether the Defendants violated the RICO;

j. Whether the Defendants should be required to compensate the Class with treble damages, attorneys fees and costs for violating the RICO.

113. The putative Class meets the typicality requirement of Rule 23(a)(3) because Plaintiffs and the putative Class members were all employed by Defendants and were all subjected to the same unlawful policy.

114. The Class meets the adequacy requirement of Rule 23(a)(4) because there is no apparent conflict of interest between Plaintiffs and the putative Class members, and because Plaintiffs' attorneys have successfully prosecuted many complex class actions, and will adequately represent the interests of Plaintiffs and the putative Class members.

115. The putative Class meets the predominance requirement of Rule 23(b)(3), because issues common to the Class predominate over any questions affecting only individual members, including but not limited to, those listed above.

116. The Class meets the superiority requirement of Rule 23(b)(3) because allowing the parties to resolve this controversy through a class action would permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender.

117. Given the material similarity of the Class members' claims, even if each Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of dozens or even hundreds of identical actions.  Individual litigation of the legal and factual issues raised by Defendants' conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative

Class's claims, create significant economies of scale for the Court and the parties and result in a binding, uniform adjudication on all issues.

## COUNT I
### Violation of Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C. § 1961 *et seq.*
### MAIL AND WIRE FRAUD OF FEDERAL GOVERNMENT

118.  Plaintiffs realleges and incorporates herein all previous paragraphs.

119.  This Count applies to Defendant Agostino and Defendant Franco.

120.  Vitale's of Allegan, is an enterprise engaged in and whose activities affect interstate commerce. Defendant Agostino, Defendant Franco, Defendant Leonardi, and Defendant Tinwalde are employed by or associated with the enterprise.

121.  Defendant Agostino and Defendant Franco were associated with an enterprise engaged in, or whose activities affect interstate or foreign commerce to conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity, including repeated acts of mail fraud and wire fraud are in violation of RICO, 18 U.S.C. § 1962(c).

122.  Defendant Agostino and Defendant Franco agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiffs and the IRS. Specifically, any and all instances where Defendant Agostino and Defendant Franco communicated with the IRS and represented incorrect tax withholdings due to the unlawful payment policy meant to defraud the same.

123.  As a direct, intended, and foreseeable result of the Defendant Agostino and Defendant Franco's violations of RICO, through the criminal scheme described above, Plaintiffs and class members have suffered injury to their property, including the loss of money and exposure to additional tax liability along with fines and interest.

124.  The criminal acts of mail fraud and wire fraud committed by Defendant Agostino and Defendant Franco were directly related to and were substantial factors in causing injury to Plaintiffs and class members.

125.  The acts mail fraud and wire fraud set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

126.  Defendant Agostino and Defendant Franco have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity above, in violation of 18 U.S.C. § 1962(c).

127.  Plaintiffs are entitled to relief, including treble damages and attorneys fees pursuant to RICO, 18 U.S.C. §1964(c).

**COUNT II**
**Violation of Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C. § 1961 *et seq.***
**MAIL AND WIRE FRAUD OF STATE GOVERNMENT**

128.   Plaintiffs realleges and incorporates herein all previous paragraphs.

129.   This Count applies to Defendant Agostino and Defendant Franco.

130.   Vitale's of Allegan is an enterprise engaged in and whose activities affect interstate commerce. Defendant Agostino, Defendant Franco, Defendant Leonardi, and Defendant Tinwalde are employed by or associated with the enterprise.

131.   Defendant Agostino and Defendant Franco were associated with an enterprise engaged in, or whose activities affect interstate or foreign commerce to conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity, including repeated acts of mail fraud and wire fraud are in violation of RICO, 18 U.S.C. § 1962(c).

132.   Defendant Agostino and Defendant Franco agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiffs and the Michigan Department of Treasury. Specifically, any and all instances where Defendant Agostino and Defendant Franco communicated with the Michigan Department of Treasury and represented incorrect tax withholdings due to the unlawful payment policy meant to defraud the same.

133.   As a direct, intended, and foreseeable result of the Defendant Agostino and Defendant Franco's violations of RICO, through the criminal scheme described above, Plaintiffs and class members have suffered injury to their property, including the loss of money.

134.   The criminal acts of mail fraud and wire fraud committed by Defendant Agostino and Defendant Franco were directly related to and were substantial factors in causing injury to Plaintiffs and class members.

135.   The acts mail fraud and wire fraud set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

136.   Defendant Agostino and Defendant Franco have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity above, in violation of 18 U.S.C. § 1962(c).

137.   Plaintiffs are entitled to relief, including treble damages and attorneys fees pursuant to RICO, 18 U.S.C. §1964(c).

**COUNT III**
**Violation of Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C. § 1961 *et seq.***
**MAIL AND WIRE FRAUD OF Plaintiffs AND CLASS MEMBERS**

138.    Plaintiffs realleges and incorporates herein all previous paragraphs.

139.    This Count applies to Defendant Agostino and Defendant Franco.

140.    Vitale's of Allegan is an enterprise engaged in and whose activities affect interstate commerce. Defendant Agostino, Defendant Franco, Defendant Leonardi, and Defendant Tinwalde are employed by or associated with the enterprise.

141.    Defendant Agostino and Defendant Franco associated with an enterprise engaged in, or whose activities affect interstate or foreign commerce to conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity, including repeated acts of mail fraud and wire fraud are in violation of RICO, 18 U.S.C. § 1962(c).

142.    As a direct, intended, and foreseeable result of the Defendant's violations of RICO, through the criminal scheme described above, Plaintiffs and class members have suffered injury to their property, including the loss of money.

143.    The criminal acts of mail fraud and wire fraud committed by Defendant Agostino and Defendant Franco were directly related to and were substantial factors in causing injury to Plaintiffs and class members.

144.    The acts of mail fraud and wire fraud set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

145.    Defendant Agostino and Defendant Franco have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity above, in violation of 18 U.S.C. § 1962(c).

146.    Defendant Agostino and Defendant Franco have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity above, in violation of 18 U.S.C. § 1962(d).

147.    Plaintiffs is entitled to relief, including treble damages and attorneys fees pursuant to RICO, 18 U.S.C. §1964(c).

## COUNT IV
### Violation of Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C. § 1961 *et seq.*
### MAIL AND WIRE FRAUD OF WORKER'S COMPENSATION INSURANCE

148.    Plaintiffs realleges and incorporates herein all previous paragraphs.

149.    This Count applies to Defendant Agostino and Defendant Franco.

150.    Vitale's of Allegan is an enterprise engaged in and whose activities affect interstate commerce. Defendant Agostino, Defendant Franco, Defendant Leonardi, and Defendant Tinwalde are employed by or associated with the enterprise.

151.    Defendant Agostino and Defendant Franco were associated with an enterprise engaged in, or whose activities affect interstate or foreign commerce to conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity, including repeated acts of wire fraud are in violation of RICO, 18 U.S.C. § 1962(c).

152.    Defendant Agostino and Defendant Franco agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiffs and his Worker's Compensation Insurance carrier. Specifically, any and all instances where a report was given to Defendant's insurance carrier of compensation derived from the unlawful payment policy that did not reflect the total compensation to the rest of the same being distributed via cash.

153.    As a direct, intended, and foreseeable result of Defendant Agostino and Defendant Franco's violations of RICO, through the criminal scheme described above, Plaintiffs and class members have suffered injury to their property, including the loss of money.

154.    The criminal acts of wire fraud committed by Defendant Agostino and Defendant Franco were directly related to and were substantial factors in causing injury to Plaintiffs and class members.

155.    The acts of wire fraud set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

156.    Defendant Agostino and Defendant Franco have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity above, in violation of 18 U.S.C. § 1962(c).

157.    Plaintiffs are entitled to relief, including treble damages and attorneys fees pursuant to RICO, 18 U.S.C. §1964(c).


**COUNT V**
**Violation of Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C. § 1961 *et seq.***
**CONSPIRACY TO VIOLATE RICO**

158.    Plaintiffs realleges and incorporates herein all previous paragraphs.

159.    This Count applies to all Defendants.

160.    Defendants conspired with each other by entering into an agreement to commit one or more of the predicate acts outlined above in furtherance of their criminal scheme to defraud Plaintiffs and class members.

161.   Defendants conspired with each other by entering into an agreement to commit one or more of the predicate acts outlined above in furtherance of their criminal scheme to defraud the tax authorities.

162.   Defendants conspired with each other by entering into an agreement to commit one or more of the predicate acts outlined above in furtherance of their criminal scheme to defraud their insurance carriers.

163.   Defendants willfully, intentionally, and with full knowledge of the actions taken and their natural and obvious consequences conspired with each other to further the criminal schemes outlined above.

164.   Defendants have directly and indirectly participated in the conduct that furthered the schemes of the enterprise affairs through the pattern of racketeering and activity above, in violation of 18 U.S.C. § 1962(d).

165.   Plaintiffs are entitled to relief, including treble damages and attorneys fees pursuant to RICO, 18 U.S.C. §1964(c).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs requests the following relief:

A.   Certifying this action as a class action pursuant to Rule 23(b)(3).

B.   Designating Plaintiffs as the representative of the proposed Rule 23 Class;

C.   Appointing Avanti Law Group, PLLC as Class Counsel;

D.   Granting Judgment in favor of Plaintiffs against Defendants and award Plaintiffs and Class Members treble compensatory damages for Defendants' violation of RICO;

E.   Award Plaintiffs' costs and reasonable attorneys' fees; and

F.   The Court grant such other and further relief as the Court may deem just or equitable.

G.

## JURY DEMAND

NOW COMES Plaintiffs, by and through their attorney, and hereby request a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: August 1, 2018                          Respectfully Submitted,

                                               /s/  *Robert Anthony Alvarez*              .
                                               Robert Anthony Alvarez (P66954)
                                               Attorney for Plaintiffs
                                               Avanti Law Group. PLLC

Jul. 31. 2018  2:27PM    Avantilaw

RECEIVED  10/15/2015 05:28AM
No. 0090   P. 7

## VERIFICATION

I declare under penalty of perjury that the statements outlined above in this Original Complaint are true and accurate to the best of my knowledge, information and belief.

Date: 7/31/18

David Nyitray III

## **VERIFICATION**

I declare under penalty of perjury that the statements outlined above in this Original Complaint are true and accurate to the best of my knowledge, information and belief.

Date: 7-31-18

Isea Marichalar